# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JOHN ANDERSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:16-CV-558 (MTT) |
| | ) |
| FCA U.S., LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On January 11, 2019, the Court held a hearing on pending motions—Defendant FCA's motion for summary judgment (Doc. 42) and six motions to exclude expert testimony (Docs. 43, 44, 45, 46, 47, 50). Doc. 83. The Court ruled on most of these motions at the hearing. *Id.* With regard to the Defendant's motion for summary judgment, the Court granted the motion in part and announced it would deny the remainder of the motion by written order. *Id.* The Court deferred ruling on the Plaintiffs' motion to exclude certain testimony of defense expert Daniel Toomey (Doc. 44). Doc. 83. This order **DENIES** the remainder of FCA's motion for summary judgment (Doc. 42), **DENIES in part**[1] FCA's motion to exclude the defective design opinions held by Neil Hannemann (Doc. 43), and **GRANTS** the Plaintiffs' motion to exclude Toomey's testimony (Doc. 44).

---

[1] The Court excluded one of Hannemann's opinions at the hearing. Doc. 83.

## I. BACKGROUND[2]

On January 30, 2016 at 3:42 a.m., Tristan Anderson lost control of his 2007 Jeep Wrangler. Doc. 42-2. The Jeep hit a stacked rock wall, became airborne, and rolled onto the driver's side. *Id.* at 3. A rear-seat passenger, who was not wearing a seatbelt, was ejected and died. *Id.* at 4; Docs. 57 at 102:11-102:19, 117:8-117:11; 59 at 74:18-22. Tristan and a front-seat passenger lost consciousness. Doc. 58 at 87:12-16, 88:2-12, 104:3-15. Shortly after impact, the Jeep caught fire. Doc. 42-2. The passenger regained consciousness and escaped. Doc. 58 at 87:12-16, 88:2-12, 104:3-15. Tristan too regained consciousness, but not in time to safely free himself. *Id.* He was severely burned and later died. Doc. 61 at 49:12-17.

The Jeep was designed and manufactured by Daimler Chrysler Corporation. Doc. 51 at 196:19-21. In 2009, Chrysler, along with twenty-four of its affiliated entities, filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Doc. 42-7. In the bankruptcy case, Chrysler entered into a court-approved master transaction agreement (MTA), in which FCA purchased substantially all of the debtors' assets and assumed certain of their liabilities. Docs. 42-8; 42-9; 42-10; 42-11. The MTA provided that FCA assumed responsibility for Chrysler's product liability claims, including wrongful death claims, seeking compensatory damages; FCA did not assume responsibility for "punitive damages." Docs. 42-8 at 19-21; 42-9 ¶¶ 12, 13, 35, 39; 42-10 ¶¶ 14, 32; 42-11 ¶¶ 1-3.

---

[2] Unless stated otherwise, the facts are undisputed. For purposes of the summary judgment motion, the facts are viewed in the light most favorable to the Plaintiffs.

In their amended complaint,[3] John Anderson, as Tristan's father and as administrator of Tristan's estate, and Julie Peoples, Tristan's mother, assert strict liability and negligence claims based on a number of alleged defects, acts, and omissions.  Doc. 5.  However, the Plaintiffs now focus primarily on what they claim was the Jeep's inadequately guarded fuel tank.  *See generally* Docs. 69; 70.  Relying on a battery of experts, they claim that something, most likely a rock, penetrated the unprotected fuel tank, causing the fire that took Tristan's life.  *See generally* Docs. 52; 54; 55; 56; 57.  Significantly, the Plaintiffs seek only compensatory damages, including the full value of Tristan's life, the measure of damages under Georgia's wrongful death statute (O.C.G.A. § 51-4-4).  Doc. 5 at 10.

FCA moves for summary judgment on two grounds relevant here.  Doc. 42.  First, FCA argues that it is entitled to summary judgment because the Plaintiffs' wrongful death claim was not included in FCA's assumption of liabilities in the MTA.  Doc. 42-1 at 8-14.  Specifically, FCA argues that because Georgia's wrongful death statute is "punitive in nature" and the MTA assumption of liabilities excludes punitive damages, it is entitled to summary judgment.  *Id.*

Second, FCA contends the Plaintiffs' theories of liability hinges on Hannemann's defective design opinion.  *Id.* at 8.  In a separate motion, FCA moves to exclude that

---

[3] In the initial complaint, the Plaintiffs were identified as Christina and John Anderson, surviving parents of Tristan Anderson.  Doc. 1.  In the now applicable amended complaint, which was filed as a matter of right before FCA filed its answer, the Plaintiffs were identified as John Anderson and Julie Peoples, parents of Tristan, and John Anderson as administrator of Tristan's estate.  Doc. 5 at 1.  John Anderson, the amended complaint explained, had not been appointed representative of Tristan's estate when the first complaint was filed.  *Id.* ¶ 2.  Also, it seems, the Plaintiffs' counsel was unaware that Tristan was a child of John Anderson's previous marriage with Julie Peoples.  Doc. 53 at 15:4-16:18.  Although the Plaintiffs did not move to join new parties when they filed their amended complaint, FCA has, understandably, not objected to the Plaintiffs' counsel's efforts to get the right parties before the Court.  Accordingly, the Court acknowledges that Christina Anderson has been dismissed, and the Clerk is directed to correct the case style to accord with the amended complaint.

opinion and argues that if it is excluded, the Plaintiffs have no evidence of liability and, therefore, summary judgment is appropriate. Docs. 42-1 at 8; 43. At the hearing, the Court ruled that Hannemann's design theory would not be excluded for reasons that would be addressed further by written order. Doc. 83. This order elaborates on why FCA's motion to exclude Hannemann's defective design opinion (Doc. 43) and its summary judgment motion based on that motion (Doc. 42), are denied.

The Plaintiffs move to exclude certain testimony of Daniel Toomey, FCA's accident reconstruction expert. Doc. 44. Specifically, the Plaintiffs move to exclude his testimony regarding "data from the National Automotive Sampling System/Crashworthiness data [sic] ("NASS") tending to establish that front impacts with a delta-V, or change in velocity, of 30 mph or less account for more than 98% of all frontal impacts and that front impacts with a delta-V of 40 mph or less account for more than 99% of all frontal impacts." *Id.* at 3. Toomey testified the data demonstrate that the impact here was more severe than ninety-nine percent of all frontal impact crashes. *Id.*

## II. DISCUSSION

### A. Motion for Summary Judgment

At the January hearing, the Court granted FCA's motion for summary judgment on the Plaintiffs' claims based on theories of defective design of the fire wall, defective manufacturing, defective assembly, failure to recall, failure to adequately test, and failure to warn, as well as the Plaintiffs' claim for attorney's fees. Doc. 83. The Court also denied FCA's motion regarding what FCA considers an alternative design claim. *Id.* The only remaining issues are (1) whether FCA assumed liability for claims brought

under Georgia's wrongful death statute, and (2) whether Hannemann's defective design opinion should be excluded, leaving the Plaintiffs with no evidence of liability.

### 1. Motion for Summary Judgment Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (emphasis in original). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted). "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

In determining whether a genuine dispute of material fact exists, the Court must avoid weighing conflicting evidence or making credibility determinations. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the

suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

### 2. Georgia's Wrongful Death Statute

FCA contends that it "only assumed liability for certain claims." Doc. 42-1 at 8. Specifically, FCA argues that it did not assume "liability for punitive damages, including wrongful death damages deemed punitive under Georgia law." *Id.* FCA cites several Georgia Supreme Court decisions stating that plaintiffs cannot recover punitive damages in addition to other damages under Georgia's wrongful death statute, because the statute is a legislative penalty and punitive in nature. *Id.* at 12-14. In its reply brief, FCA also cites a recent bankruptcy court decision concluding that plaintiffs could not recover from FCA under Alabama's wrongful death statute, because that statute *only* allows the recovery of punitive damages. Doc. 76 at 3-5 (citing *In re Old Carco LLC*, 593 B.R. 182 (Bankr. S.D.N.Y. 2018)).

*In re Old Carco LLC* is instructive, but it does not help FCA, because Georgia's wrongful death statute is not at all like Alabama's wrongful death statute. Like all wrongful death statutes tracing their origin to Lord Campbell's Act—actually, like all remedies for wrongful death regardless of their lineage—Georgia's wrongful death statute, for an obvious reason, does not compensate the decedent, and, to that extent, is considered punitive. Robert E. Cleary, Jr., *Georgia Wrongful Death Actions With Forms* § 1.3 (4th ed. 2019). But that does not mean a recovery under Georgia's statute is one for punitive damages. Punitive damages are intended to punish and deter the defendant from inflicting more harm and are measured based on the defendant's culpability, as opposed to actual damages that are designed to compensate. *Colonial*

*Pipeline Co. v. Brown*, 258 Ga. 115, 118, 120, 365 S.E.2d 827, 830-31 (1988) (citations omitted); *see also Actual Damages* & *Punitive Damages*, BLACK'S LAW DICTIONARY (10th ed. 2014). And compensate is what Georgia's wrongful death statute does; it allows the decedent's surviving spouse, father, mother, or child, as the case may be, to recover the full value of the decedent's life.[4] *Engle v. Finch*, 165 Ga. 131, 131, 139 S.E. 868, 869 (1927).

Alabama's wrongful death statute, in stark contrast to Georgia's statute, *only* allows the recovery of punitive damages. *Compare* O.C.G.A. § 51-4-4 *with* 6 ALA. CODE § 6-5-410. "[T]he Alabama wrongful death statute is *the only one of all the fifty states that provides for punitive damages only* and allows for the recovery of punitive damages on a showing of mere negligence*.*" *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1425 (11th Cir. 1997) (internal citations omitted) (emphasis added). Accordingly, damages under Alabama's wrongful death statute are measured by the culpability of the defendant, not by the value of the decedent's life. *In re Old Carco LLC*, 593 B.R. at 192 (citing *Trott v. Brinks, Inc.*, 972 So.2d 81, 84 (Ala. 2007) (The instant action is a wrongful-death action under Ala. Code 1975, § 6-5-410. In such a case, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not compensate the plaintiff.")).

---

[4] Most states' wrongful death statutes are also modeled after Lord Campbell's Act, which created a new cause of action in favor of a decedent's survivors. William L. Prosser & W. Page Keeton, *Prosser and Keeton on Torts* § 127 (5th ed. 1984). Until the Act's passage, wrongful death actions were not recognized by British and American courts, because the predominate purpose of tort actions is to compensate a victim for his loss—not deter the defendant, as punitive damages are intended to do—and a dead victim could not be compensated *Id.* The result was that it was cheaper for the defendant to kill the victim than to injure him, leaving his survivors without a remedy. *Id.*

The MTA provides that FCA did not assume liability for "punitive damages." Docs. 42-8 at 19-21; 42-9 ¶¶ 12, 13, 35, 39; 42-10 ¶¶ 14, 32; 42-11 ¶¶ 1-3. Because the Georgia wrongful death statute does not in any way allow the recovery of punitive damages, the Plaintiffs' wrongful death claim is not excluded from FCA's assumption of liabilities. On the contrary, the MTA specifically provides that FCA assumed liability for wrongful death actions, and Georgia's wrongful death statute, apparently like the wrongful death statutes of forty-eight other states, provides for the recovery of compensatory damages. Thus, FCA has not established that the MTA excluded the Plaintiffs' wrongful death claim from FCA's assumption of liabilities, and its motion for summary judgment on that ground (Doc. 42) is **DENIED**.

### 3. Hannemann's Testimony

Neil Hannemann, the Plaintiffs' design expert, opined that the Jeep was defectively designed because the Jeep's skid plate, which guarded the Jeep's fuel tank, did not completely cover the fuel tank, leaving it vulnerable to puncture. Doc. 43; *see generally* Doc. 69-3. From a common sense standpoint (admittedly, common sense sometimes is hard to find in *Daubert* motion practice), Hannemann's opinion has appeal. If it is necessary and appropriate to guard the fuel tank of a vehicle intended to operate on rough terrain, why not guard the entire fuel tank? FCA argues in its motion for summary judgment that if the Court excludes Hannemann's opinion, then the Plaintiffs will have no evidence to support their defective design claim and thus cannot, as a matter of law, recover. Doc. 42-1 at 8.

### a. *Daubert* Standard

The *Daubert* issues raised by FCA's motion to exclude Hannemann's opinion and the Plaintiffs' motion to exclude Toomey's testimony are straightforward, and only the basics of *Daubert* analysis need be stated.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Trial courts are to act as "gatekeepers" to ensure that speculative and unreliable opinions do not reach the jury. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 589, n.7 (1993). Trial courts must (1) determine whether the expert has the qualifications to offer his opinions, *Poulis-Minott v. Smith*, 388 F.3d 354, 359 (1st Cir. 2004); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); (2) "'conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards of admissibility," *Frazier*, 387 F.3d at 1260 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)) (emphasis in original); and (3) ensure that the expert testimony is relevant and will assist the jury, *see Daubert*, 509 U.S. at 591.

### b. Analysis

FCA contends that Hannemann's opinions are unreliable because his opinion has not been "evaluated through testing." Doc. 43-1 at 16. FCA further contends that his testimony is nothing more than speculation and ipse dixit because (1) there is no

government requirement or industry standard requiring complete coverage of the fuel tank, and (2) there are forty-one other vehicles' tanks that do not have complete coverage. *Id.* at 13-16.

FCA offers no legal authority to support its argument that lack of testing renders Hannemann's opinion unreliable. *See generally* Doc. 43-1. This is not surprising; design experts, like experience-based experts generally, are not necessarily required to "test" their opinions. *See Padgett v. Kmart Corp.*, 2016 WL 3746671, at *5 (S.D. Ga. 2016). Expert testimony must be "the product of reliable principles and methods." Fed. R. Evid. 702. "However, some types of expert testimony . . . may not be evaluated on the *Daubert* factors of testing, peer review and publication, potential rate of error, and general acceptance in the relevant community." *Padgett*, 2016 WL 3746671, at *5 (citation omitted). "If a proposed expert opinion principally relies on experience and knowledge, a court must satisfy itself that the expert has appropriately explained how the expert's experience and knowledge has led to the conclusions, why the expert's experience provides a sufficient basis for the opinion, and why that experience is reliably applied to the facts." *Id.* (holding that an expert's opinion regarding a security plan in a store parking lot was reliable based on his thirty-six years of experience and training in risk assessment, treatise material, and on-site inspection) (citing *Clena Invs., Inc. v. WL Specialty Ins. Co.*, 280 F.R.D. 653, 663 (S.D. Fla. 2012)).

Hannemann meets that standard. He has nearly thirty years of experience in vehicle design and safety analysis, has been involved with or overseen the design and manufacture of vehicles, has relied on the undisputed testing and analysis performed by other experts and the National Highway Traffic Safety Administration, and has applied

this testing and his experience to reach his conclusions. Doc. 69 at 3-4. While Hannemann did not "test" his defective design theory, FCA has not explained how one goes about testing a defective design opinion. Simply put, "[p]hysical testing is not an absolute prerequisite to the admission of expert testimony." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 586 (N.D. Fla. 2009) (citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996)). As stated in the Plaintiffs' brief, "'it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and knowledge after a review of evidence.'" Doc. 69 at 5 (quoting *Reid v. BMW of N. Am.*, 430 F. Supp. 1365, 1370 (N.D. Ga. 2006)).

FCA appears to confuse an opinion based on experience with ipse dixit. Certainly, an ipse dixit opinion, or "believe it solely because I said it," is inadmissible, but an expert offering an opinion based on experience is not asking a jury to believe it only because he says it. *Bullock v. Volkswagen Grp. of Am., Inc.*, 160 F. Supp. 3d 1365, 1369 (M.D. Ga. 2016) ("Expertise gained by experience can be a powerful thing.") (citing *Bullock v. Volkswagen Grp. of Am., Inc.*, 107 F. Supp. 3d 1305, 1308 (M.D. Ga. 2015)). Rather, as Hannemann did here, that expert validates his opinion through his experience.

As stated by the Court at the hearing, FCA's second argument, regarding the absence of government requirements or industry standards and the lack of fully covered fuel tanks on other makes and models, is unpersuasive. Essentially, this argument attacks Hannemann's credibility. Expert witness credibility determinations and the weighing of competing evidence are functions for the jury, not the Court. *Hockensmith v. Ford Motor Co.*, 2003 WL 25639639, at *5 (N.D. Ga. 2003) (citations omitted).

Accordingly, FCA's motion to exclude Hannemann's testimony (Doc. 43) is **DENIED in part**.  Specifically, FCA's motion to exclude Hannemann's defective design theory is denied.

## B.  Motion to Exclude Toomey's Testimony

The Plaintiffs have moved to exclude certain testimony of FCA's accident reconstruction expert, Daniel Toomey.  Doc. 44.  In his expert report, Toomey quotes NASS statistical data suggesting that Tristan's crash was more severe than ninety-nine percent of all frontal impact crashes.  Doc. 44-2.  The Plaintiffs argued a myriad of reasons as to why this portion of Toomey's testimony should be excluded, including that it is irrelevant because the NASS data are derived from crashes that are not substantially similar to Tristan's, which could result in unfair prejudice, confusion, and a misled jury.  Doc. 44 at 2, 5-7.

"Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Even if evidence is relevant, if the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury, the relevant evidence should be excluded.  Fed. R. Evid. 403.  Expert testimony, therefore, must be both relevant and helpful to the jury.  Fed. R. Evid. 702(a).  The Court's role is to "keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999).  "Thus, the evidence must have a valid scientific connection to the disputed facts in the case." *Id.* at 1312 (citing *Daubert*, 509 U.S. at 591 ("[S]cientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . .  Rule 702's 'helpfulness'

standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.""))

FCA contends that the Plaintiffs' counsel "made these *same exact arguments* before Judge Batten in the Northern of [sic] District of Georgia regarding the *same exact NASS data*, and it was roundly rejected by the [c]ourt." Doc. 66 at 2 (citing *Bacho v. Rough Country, LLC*, 2016 WL 4607880, at *5 (N.D. Ga. 2016)) (emphasis in original). Not quite. In *Bacho*, the Bachos brought a defective design claim against the manufacturer of a lift kit[5] installed on the vehicle that caused an accident, resulting in the death of the Bachos' daughter. 2016 WL 4607880, at *1. As the court said in *Bacho*, the NASS "data must be examined in connection with the proffered opinion." *Id.* at *5. In *Bacho*, the defendant's expert relied on the data to support her opinion that a low-impact collision "can [nevertheless] generate substantial crush." *Id.* This, in turn, supported her opinion that the lift kit design was "consistent with industry state of the art," meaning that the lift kit was designed above industry standards to withstand severe crashes. *Id.* at *4. In short, the expert used the data in her risk utility analysis to support her opinion that the lift kit was not defectively designed. *Id.*

Toomey, on the other hand, does not rely on the NASS data to support any particular opinion he has reached. Doc. 86 at 30:25-34:5. Rather, as FCA acknowledged at the motion hearing, it simply wants to use the data to "put in perspective the impact." *Id.* at 29:13-19. In other words, FCA wants to show this was a bad crash, a point made abundantly clear by other evidence. *Id.* at 41:14-19. Although

---

[5] "A lift kit is a collection of parts that are added to a vehicle's suspension to raise the ride-height." *Bacho v. Rough Country, LLC*, 2016 WL 4607880, at *1 (N.D. Ga. 2016).

FCA argues that the data could be relevant to a risk utility analysis, it does not contend that the data were relevant to the design of the Jeep. *Id.* at 33:13-34:5. In other words, FCA does not argue that it did not design the vehicle to withstand crashes in the most dangerous one percentile. *Id.* at 41:14-19. The Court agrees that the NASS data *could* be relevant to a risk utility analysis, but Toomey does not use the data for that purpose. FCA just wants the jury to know in the abstract—and not in connection with any opinion rendered by Toomey—that this was a bad crash. *Id.* Lacking, at this point, any relevance to any legitimate issue, the Court agrees that Toomey's parroting of the statistical data should be excluded. Accordingly, the Plaintiffs' motion to exclude Toomey's testimony regarding the NASS data (Doc. 44) is **GRANTED**.

### III. CONCLUSION

For the reasons discussed above, the Defendant's motion for summary judgment (Doc. 42) is **DENIED in part**, the Defendant's motion to exclude Hannemann's testimony (Doc. 43) is **DENIED in part**, and the Plaintiffs' motion to exclude Toomey's testimony (Doc. 44) is **GRANTED**.

**SO ORDERED,** this 21st day of February, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT